**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | | |
|---|---|---|
| ENSINGER INC.,<br><br>Plaintiff,<br><br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Court No. 1:26-cv-05073 |

# AMENDED COMPLAINT

ENSINGER INC. ("Ensinger" or "Plaintiff"), by and through its undersigned counsel, files its Amended Complaint pursuant to USCIT Rule 15(a)(1), and alleges as follows:

## INTRODUCTION

1. Plaintiff is a U.S.-based importer of merchandise subject to the challenged duties, including but not limited to polymer-based stock shapes, semi-finished and in-process parts, compounded resins, and manufacturing equipment imported from Germany, Austria, and other countries.

2. Beginning in February of 2025, through a series of executive orders, President Trump invoked the International Emergency Economic Powers Act ("IEEPA") as authority to impose new and substantial tariffs ("IEEPA duties") on goods imported from nearly every foreign country, including countries from which Plaintiff sources its imports. Plaintiff is responsible for paying these tariffs on its imported goods.

3. This Court, the Federal Circuit, and the Supreme Court have held that IEEPA does not authorize these tariffs. *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *aff'd Learning Res., Inc. v. Trump*, 607 U.S. 229 (2026).

4. Through this action, Plaintiff asks the Court to hold for it exactly what it and the Federal Circuit already held in *V.O.S. Selections*: that the IEEPA duties imposed by Defendants, and the underlying executive orders that directed them, are unlawful, and to provide appropriate refund and liquidation or reliquidation relief for Plaintiff's finally liquidated, liquidated, and unliquidated entries.

5. The United States Supreme Court heard oral argument in *V.O.S. Selections* and a companion case arising out of the U.S. District Court for the District of Columbia on November 5, 2025, and issued its decision on February 20, 2026, holding that IEEPA does not authorize the President to impose tariffs. *Learning Res., Inc. v. Trump*, 607 U.S. 229 (2026).

6. This separate action is necessary because even though the Supreme Court has definitively held the IEEPA duties unlawful, importers that have paid IEEPA duties, including Plaintiff, are still not guaranteed a refund for those unlawfully collected tariffs in the absence of their own judgment and judicial relief. The Government has appealed the Court of International Trade's refund orders, has sought a stay of the universal injunction, and has signaled its intention to limit refunds only to those importers who are individual named plaintiffs in cases where the Court has entered an injunction. *Learning Resources, Inc. v. Trump*, No. 2026-1898 (Fed. Cir. filed June 2, 2026), appeal from No. 24-1287 (Ct. Int'l Trade Apr. 17, 2026). Moreover, CBP's CAPE Phase I refund system cannot process entries that have been liquidated for more than 80 days, and CBP's CAPE Phase III, deployed October 6, 2026, processes finally liquidated entries only for plaintiffs before this Court for which the Court has ordered reliquidation. Absent its

own judgment and reliquidation order, Plaintiff has no viable administrative mechanism to recover duties on such entries.

7. This action is necessary now because the entries for which Plaintiff paid tariffs imposed under authority of IEEPA began to liquidate as a matter of law on June 25, 2025. As of the date of this Complaint, multiple entries, on which IEEPA duties have been paid, liquidated and became final, having been liquidated for more than 90 days. Entries continue to liquidate on a weekly basis, and CBP has confirmed that it will not extend liquidation for entries subject to IEEPA tariffs.

8. Accordingly, Plaintiff seeks the following relief:

(i) a declaration that the IEEPA duties are unlawful;

(ii) an injunction preventing Defendants from imposing further duties on it under the executive orders challenged in this lawsuit; and

(iii) a full refund from Defendants of all IEEPA duties that Plaintiff has already paid as a result of the executive orders challenged in this lawsuit as well as those it will continue to pay.

## PARTIES

9. Plaintiff Ensinger Inc. is a corporation incorporated under the laws of the Commonwealth of Pennsylvania, with its principal place of business at 365 Meadowlands Boulevard, Washington, Pennsylvania 15301. Ensinger is the importer of record for all entries at issue.

10. Defendant United States Customs and Border Protection ("CBP") is an agency of the U.S. Department of Homeland Security headquartered in Washington, D.C. CBP is responsible for border security and collecting tariffs or duties and taxes on goods imported into the United States.

11. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

12. Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

13. Defendants are occasionally referred to collectively in this complaint as "CBP."

## JURISDICTION

14. The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i). *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1334 (Fed. Cir. 2025) *aff'd Learning Res., Inc. v. Trump*, 607 U.S. 229 (2026).

15. The Court has the same powers at law, in equity, and as conferred by statute as a United States District Court. 28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, the Court can enter a money judgment against the United States and can order any other appropriate civil relief, including declaratory judgments, injunctions, orders of remand, and writs of mandamus or prohibition. 28 U.S.C. §§ 2643(a)(1), (c)(1).

16. Plaintiff has standing to bring this lawsuit because it is the importer of record for goods imported into the United States from countries subject to the unlawful IEEPA duties as implemented and collected by Defendants. As a result of the Executive Orders challenged by this lawsuit, Plaintiff has paid IEEPA duties to the United States and thus has suffered injury caused by those Orders. Declaratory and injunctive relief from this Court would redress those injuries. Plaintiff also faces imminent and irreparable harm because entries for which it paid IEEPA duties began to liquidate on June 25, 2025, and all of said entries have since liquidated and become final, such that Plaintiff cannot obtain a refund of IEEPA duties on those entries absent a reliquidation order from this Court.

## BACKGROUND

### I. President Trump orders a series of tariffs, invoking IEEPA for his authority.

#### A. The IEEPA duties

17. On February 1, 2025, President Trump issued three Executive Orders (collectively, the "Trafficking Tariff Orders") imposing tariffs on imports from Canada, Mexico, and China. Invoking IEEPA, the President justified each order by declaring a purported national emergency.

18. The Executive Order directed at Mexico, Executive Order 14194, 90 Fed. Reg. 9,117, *Imposing Duties To Address the Situation at Our Southern Border* (Feb. 7, 2025) ("Mexico Tariff Order"),[1] imposed an additional 25 percent tariff on the import of goods from Mexico. The President's claim of emergency powers was based on "the grave threat to the United States posed by the influx of illegal aliens and illicit drugs into the United States" and "the failure of Mexico to arrest, seize, detain, or otherwise intercept [drug trafficking organizations], other drug and human traffickers, criminals at large, and illicit drugs." *Id.*

19. The executive order directed at Canada, Executive Order 14193, 90 Fed. Reg. 9,113, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border* (Feb. 7, 2025) ("Canada Tariff Order"),[2] declared an emergency because of opioid trafficking and also imposed a 25% tariff, with certain exceptions. *Id*.

20. The executive order directed at the People's Republic of China, Executive Order 14195, 90 Fed. Reg. 9,121, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the*

---

[1] Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025)

[2] Exec. Order No. 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025)

*People's Republic of China* (Feb. 7, 2025) ("China Tariff Order"),[3] declared an emergency because of opioid trafficking, declaring that "the sustained influx of synthetic opioids" was a national emergency and that "[m]any PRC-based chemical companies also go to great lengths to evade law enforcement and hide illicit substances in the flow of legitimate commerce." The President's claim of emergency powers was based on "the grave threat to the United States posed by the influx of illegal aliens and illicit drugs into the United States" and "the failure of the [People's Republic of China] government to arrest, seize, detain, or otherwise intercept chemical precursor suppliers, money launderers, other [transnational criminal organizations], criminals at large, and drugs." *Id.*

21. The China Tariff Order imposed an additional 10% *ad valorem* tariff on products from China imported into the United States on top of existing duties.

22. Four days later, on February 5, 2025, the President issued Executive Order 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,277 (Feb. 11, 2025) ("February 5 Amendment").[4]

23. The next month, on March 3, 2025, the President amended the China Tariff Order again through Executive Order 14228, 90 Fed. Reg. 11,463, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China* ("March 3 Amendment").[5] The March 3 Amendment raised the incremental tariffs on imports from China

---

[3] Exec. Order No. 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 7, 2025)

[4] Exec. Order No. 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9277 (Feb. 11, 2025).

[5] Exec. Order No. 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025).

to 20% and justified this increase by claiming that "the PRC has not taken adequate steps to alleviate the illicit drug crisis." *Id.*

24. On April 2, 2025, citing trade deficits with United States' trading partners as its own national emergency, President Trump issued Executive Order 14257, 90 Fed. Reg. 15,041, *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits* ("Reciprocal Tariff Order").[6] The Reciprocal Tariff Order imposed a 10% baseline tariff on nearly all imports to the United States, effective April 5, and additional "reciprocal" tariffs on 57 countries, effective April 9. *Id.* at Annex I. These higher country-specific tariffs range from 11% to 50%. *Id.*

25. The Reciprocal Tariff Order asserts that "U.S. trading partners' economic policies … suppress domestic wages and consumption, as indicated by large and persistent annual U.S. goods trade deficits." *See* Reciprocal Tariff Order.

26. On April 8, 2025, the President responded to retaliatory tariffs from China by raising the reciprocal tariff rate on China by 50 percentage points—from 34% to 84%. *See* Exec. Order No. 14,259, 90 Fed. Reg. 15,509, *Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports from the People's Republic of China* (Apr. 14, 2025).[7]

27. On April 9, 2025, the President suspended the country-specific tariffs for all countries except for China, for which he increased the "reciprocal" tariff from 84% to 125%. *See* Exec. Order No. 14,266, 90 Fed. Reg. 15,625, *Modifying Reciprocal Tariff Rates to Reflect*

---

[6] Exec. Order No. 14257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025)

[7] Exec. Order No. 14259, *Amendment to Reciprocal Tariffs and Updated Duties As Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15509 (Apr. 14, 2025).

*Trading Partner Retaliation and Alignment* (Apr. 9, 2025).[8] Because the 20% trafficking tariff remained active, most Chinese imports faced a cumulative IEEPA tariff of at least 145%.

28. In implementing their Executive-Order-based tariff regime, the Defendants directed changes to the Harmonized Tariff Schedule of the United States, requiring that goods subject to the challenged tariffs be entered under new tariff codes.

29. On April 14, 2025, several companies filed an action in this Court challenging the legality of these tariff orders. *See V.O.S. Selections, et al. v. Donald J. Trump, et al.*, No. 25-cv-00066 (Dkt. 2). As discussed below, this Court held that the orders were unlawful and the Federal Circuit, sitting *en banc*, affirmed.

30. In the months since the *V.O.S. Selections* Complaint was filed, President Trump, invoking IEEPA, has issued additional executive orders imposing additional tariffs and modifying others. By this complaint, however, Plaintiff challenges only those orders the Federal Circuit and the Supreme Court in *Learning Resources* have already held to be unlawful ("Challenged Tariff Orders").

**B. CBP's implementation of the unlawful tariffs**

31. CBP is charged with the assessment and collection of duties, including the IEEPA duties. *See* 19 U.S.C. §§ 1500, 1502.

32. Through the Omnibus Trade and Competitiveness Act of 1988, Congress adopted the Harmonized Tariff Schedule of the United States ("HTSUS") as the nation's official tariff nomenclature. Pub. L. No. 100-418, 102 Stat. 1107. Pursuant to 19 U.S.C. §§ 1202 and 1500, CBP classifies all imported merchandise according to the HTSUS to determine applicable tariff

---

[8] Exec. Order No. 14266, *Modifying Reciprocal Tariff Rates To Reflect Trading-Partner Retaliation and Alignment* (Apr. 9, 2025) 90 Fed. Reg. 15625 (Apr. 15, 2025)

rates and statistical categories. 19 U.S.C. § 1202. The primary headings of the HTSUS describe broad categories of merchandise, while its subheadings provide a particularized division of the goods within each category. *Id*.

33. The CBP's regulations govern the classification and appraisement of merchandise, consistent with the HTSUS. 19 C.F.R. § 152.11 ("Merchandise shall be classified in accordance with the Harmonized Tariff Schedule of the United States (19 U.S.C. § 1202) as interpreted by administrative and judicial rulings.").

34. CBP classifies merchandise per the HTSUS, 19 C.F.R. § 152.11, which is maintained by the USITC but modified exclusively by the President, 19 U.S.C. §§ 1202, 3005–06. Judicial precedent confirms that the authority to alter HTSUS rates and categories lies with the Executive. *See Michael Simon Design, Inc. v. United States*, 33 C.I.T. 1003, 1010 (2009); *Maple Leaf Mktg., Inc. v. United States*, 582 F. Supp. 3d 1365, 1378-79 (Ct. Int'l Trade 2021).

35. Upon entry or withdrawal from warehouse for consumption of goods imported into the United States, the importer must pay estimated duties on the goods unless the importer is permitted to delay payment under an entry bond. 19 U.S.C. §§ 1505(a), 1514, 1520(d). All payments of estimated duties constitute a trust deposit and must either be deposited with the Treasurer of the United States or treated as a customs bond. 19 U.S.C. § 1505(b)-(c).

**C. Liquidation**

36. "Liquidation" is the "final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1.

37. When goods are imported into the United States, the importer of record pays an estimated duty on the *entry* based on its customs declaration, which asserts value, origin and HTSUS classification for the imported goods. *See* 19 U.S.C. § 1484. CBP then confirms the

final value, classification, duty rate, and final amount of duty for the imported goods. *See* 19 U.S.C. § 1500.

38. CBP then fixes the final appraisement of merchandise by confirming the final value, classification, duty rate, and final amount of duty for the imported goods. *See* 19 U.S.C. § 1500.

39. Once the final amount of duty is determined by CBP, CBP "liquidates" the entry and notifies the importer of record as to whether they owe more money or are entitled to a refund. *See* 19 U.S.C. § 1504(b).

40. Absent an extension, CBP must liquidate each entry within one year of the date on which the entry was filed. *See* 19 U.S.C. § 1504(a). Liquidation will occur automatically by operation of law at the duty rate asserted at the time of entry. 19 C.F.R. § 159.11. Typically, liquidation is done automatically by operation of law. CBP tries to liquidate duties 314 days after the date of entry of the goods and will usually post a notice on its website.

41. CBP may extend the one-year timeframe for up to an additional year prior to the date on which the entry would be liquidated upon an importer's showing of good cause. *See* 19 U.S.C. § 1504(b)(2); 19 C.F.R. § 159.12(a)(1)(ii).

42. This Court possesses the equitable authority to suspend liquidation. *E.g., In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1365-66 (Ct. Int'l Trade 2021).

43. Once liquidation has occurred, and *if* the liquidation is protestable, an importer of record has 180 days to file a protest contesting the liquidation, asking the CBP to "reliquidate" the duties. *See* 19 U.S.C. § 1514. But not all liquidations are protestable: where CBP acts in a ministerial capacity (*i.e.*, without discretion) in imposing a duty, the entry's liquidation cannot be protested. *Id.*; *see also Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024).

44. This Court and the Federal Circuit have cautioned that an importer may lack the legal right to recover refunds of duties for entries that have liquidated, even where the underlying legality of a tariff is later found to be unlawful. *See In re Section 301 Cases*, 524 F. Supp. 3d at 1365-66; *Target Corp. v. United States*, 134 F.4th 1307, 1316 (Fed. Cir. 2025).

**II. IEEPA does not authorize tariffs.**

45. The Challenged Tariff Orders cite IEEPA, 50 U.S.C. § 1701 *et seq.*, the National Emergencies Act, 50 U.S.C. § 1601 *et seq.*, section 604 of the Trade Act of 1974, as amended, 19 U.S.C. § 2483, and 3 U.S.C. § 301 for authority to impose tariffs.

46. None of these statutes authorizes the President to impose tariffs. Defendants rely exclusively on IEEPA to impose and collect these duties. IEEPA does not authorize the measures sought by the Challenged Tariff Orders.

47. IEEPA grants the President certain powers, but they "may only be exercised to deal with an unusual and extraordinary threat with respect to which a national emergency has been declared for purposes of this chapter and may not be exercised for any other purpose." 50 U.S.C. § 1701(b).

48. Those powers include the ability to "investigate, regulate, or prohibit" certain transactions in foreign exchange, payments through banks involving foreign countries or nationals, or imports of "currency or securities." 50 U.S.C. § 1702(a)(1)(A).

49. The President may also control, block, or prohibit the movement or importation of funds or property in which "any foreign country" or foreign national has "interest" in, and which is also subject to the U.S. jurisdiction. 50 U.S.C. § 1702(a)(1)(B).

50. Finally, and only when the U.S. is engaged in "armed hostilities" or has been attacked by a foreign country, the President may "confiscate" property of such a foreign person or country that also is subject to U.S. jurisdiction. 50 U.S.C. § 1702(a)(1)(C).

51. The text of IEEPA does not use the word "tariff" or any term of equivalent meaning.

52. Nothing in IEEPA gives the President the power to "regulate" imports by imposing tariffs. IEEPA was first enacted in 1977 and has been amended several times, but it has never been amended to authorize, or used by any other President to impose, tariffs.

**A. The Constitution vests in Congress—not the President—the power to impose tariffs.**

53. The U.S. Constitution provides that "[a]ll legislative powers herein granted shall be vested in a Congress of the United States." U.S. CONST. art. I, § 1.

54. The Constitution also provides that "Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises," U.S. CONST. art. I, § 8, cl. 1 ("Taxing Clause"), and "[t]o regulate Commerce with foreign Nations." *Id.*, cl. 3 ("Commerce Clause").

55. It has always been understood that tariffs fall within the Taxing and Commerce Clauses.

56. To the extent it is ever permissible under the Constitution for Congress to delegate any part of the powers vested in it by the Constitution to the President, it must do so, at a minimum, by providing an intelligible principle to direct and cabin the President's authority. *See Fed. Commc'ns Comm'n v. Consumers' Rsch.*, 145 S.Ct. 2482 (2025). IEEPA lacks any such principle. The arbitrary, "on-again/off-again" application of these duties—and the resulting market volatility—underscores the absence of any meaningful statutory limit on the President's power.

57. Reading IEEPA as authorizing tariffs would also require striking down IEEPA as unconstitutional under the nondelegation doctrine for lack of any intelligible principle.

58. Moreover, "[c]ourts expect Congress to speak clearly if it wishes to assign to an agency decisions of vast economic and political significance." *West Virginia v. EPA*, 597 U.S. 697, 716 (2022) (*quoting Utility Air Regulatory Group v. EPA*, 573 U. S. 302, 324 (2014)). When Congress has not clearly spoken, courts are directed to find that matters "of vast economic and political significance" are beyond the power of the President. *Biden v. Nebraska*, 600 U.S. 477, 505-06 (2023).

59. The Challenged Tariff Orders are "of vast economic and political significance." Because IEEPA does not clearly authorize the President to set tariffs, the Challenged Tariff Orders cannot stand, and the Defendants are not authorized to implement and collect them.

**B. Courts, including this Court, have agreed the IEEPA duties are not authorized.**

60. On May 28, 2025, this Court granted summary judgment to the plaintiffs in *V.O.S. Selections* and permanently enjoined the government from enforcing the IEEPA duties at issue in that case. That decision was appealed to the Court of Appeals for the Federal Circuit.

61. The Federal Circuit stayed this Court's decision and injunction and ordered an expedited briefing schedule and hearing.

62. Sitting *en banc*, the Federal Circuit issued its ruling on August 29, 2025, affirming this Court's decision that the IEEPA duties are unlawful. *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025) *aff'd Learning Res., Inc. v. Trump*, 607 U.S. 229 (2026).

63. In a separate lawsuit filed by a separate group of importers, the U.S. District Court for the District of Columbia likewise held that IEEPA does not authorize tariffs. *See Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *vacated*, 607 U.S. 229 (2026).

That decision was appealed to the Court of Appeals for the D.C. Circuit, but before the D.C. Circuit held argument, the U.S. Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources*. The cases were consolidated, with argument held on November 5, 2025.

64. On February 20, 2026, the Supreme Court issued its decision, holding that IEEPA does not authorize the President to impose tariffs. *Learning Res., Inc. v. Trump*, 607 U.S. 229 (2026). The Court held that IEEPA's grant of authority to "regulate . . . importation" does not encompass the power to impose tariffs, reasoning that such an extraordinary exercise of authority would require clear congressional authorization that IEEPA does not provide.

65. The Supreme Court affirmed the Federal Circuit's judgment in *V.O.S. Selections* but vacated the district court's judgment in *Learning Resources* and remanded with instructions to dismiss for lack of jurisdiction. The Court agreed with the Federal Circuit that the Court of International Trade has exclusive jurisdiction over challenges to the IEEPA tariffs under 28 U.S.C. § 1581(i)(1), because such challenges "arise[] out of [a] law of the United States providing for . . . tariffs."

66. Critically, while the Supreme Court's decision definitively invalidates the IEEPA tariffs, the Court did not address refund procedures. Justice Kavanaugh's dissent observed that "the United States may be required to refund billions of dollars to importers who paid the IEEPA tariffs," but noted that "the Court says nothing today about whether, and if so how, the Government should go about returning the billions of dollars that it has collected from importers."

**C. Government stipulation regarding refunds.**

67. During the pendency of the IEEPA tariff litigation, the Government entered into stipulations in multiple cases before the Court of International Trade—including Princess

*Awesome, LLC v. CBP et al.*, No. 25-078, *Popsockets, LLC v. U.S. et al.*, No. 25-00379, and *AGS Co. Automotive Solutions v. CBP et al.*, No. 25-00255—in which the Government represented that it "will not oppose the Court's authority to order reliquidation of entries of merchandise subject to the challenged IEEPA duties and that [it] will refund any IEEPA duties found to have been unlawfully collected, after a final and unappealable decision has been issued finding the duties to have been unlawfully collected and ordering defendants to refund the duties." The Court relied on this stipulation in denying motions for preliminary injunctions to suspend liquidation, finding that importers would not suffer irreparable harm because the Government had taken an "unequivocal position" that "liquidation will not affect the availability of refunds after a final decision" and that the Government "would be judicially estopped from taking a contrary position" in the future. *See AGS Co. Auto. Sols. v. CBP*, *consol.* Court No. 25-00255, ECF No. 29, Slip Op. at 4–8 (Ct. Int'l Trade Dec. 15, 2025). In a January 8, 2026, clarification filing, the Government confirmed that this stipulation applies to "all current and future similarly situated plaintiffs" challenging IEEPA tariffs, "regardless of whether the specific Executive Order challenged was at issue in *V.O.S.* or *AGS*." *See AGS Co. Auto. Sols., Defs.' Resp. to Ct.'s Jan. 8, 2026 Letter at 2-3, Jan. 8, 2026*, ECF No. 34 (stipulating that the Government "do[es] not intend to challenge the [c]ourts authority to order reliquidation" in any IEEPA tariff case "challeng[ing] IEEPA tariffs in a manner and on grounds that substantially overlap with" *V.O.S. Selections*.).

68. Notwithstanding the Supreme Court's February 20, 2026, decision in *Learning Resources* holding that the IEEPA tariffs are unlawful, and notwithstanding the Government's

repeated stipulations that it would refund unlawfully collected IEEPA duties, to date no such refund has been issued to the Plaintiff on its finally liquidated entries.[9]

69. Following the Supreme Court's February 20, 2026, ruling striking down the IEEPA tariffs as unlawful, administration officials have made several statements signaling an intention to resist or significantly delay refunding the tariffs that were collected. President Trump told reporters at a press conference shortly after the Court issued its decision that he expected any refund process to be "locked up in litigation for years" which signaled the administration's position that a quick, automatic refund process was unlikely. *See* Grace Eliza Goodwin, How Will Trump's New Global Tariffs Work and What's Next?, BBC News (Feb. 20, 2026), https://www.bbc.com/news/articles/c8r1e327z46o. President Trump's Executive Order revoking the IEEPA tariffs on February 20, 2026 (and the CBP’s corresponding CSMS directive) stated that the tariffs "shall no longer be in effect and, as soon as practicable, shall no longer be collected," but notably did not address the issue of refunds. *See* Exec. Order No. 14389, 91 Fed. Reg. 9437 (Feb. 20, 2026); *see also* CSMS # 67834313 – Ending Collection of International Emergency Economic Powers Act Duties (Feb. 22, 2026). Treasury Secretary Scott Bessent stated on February 20, 2026, that since the Supreme Court did not provide any instructions on refunds, those were "in dispute," adding: "My sense is that could be dragged out for weeks, months, years". See CBS Tex., Secretary of Treasury Scott Bessent Reacts to Supreme Court Ruling on Tariffs, YouTube (Feb. 20, 2026), available at https://www.youtube.com/watch?v=YTpxebixLUg&t=392s. Senator Lindsey Graham (R-S.C.)

---

[9] On the contrary, U.S. Customs and Border Protection continues to assess and collect IEEPA tariffs on goods that entered the United States prior to February 24, 2026, in direct contravention of the Supreme Court's ruling.

stated that he "support[s] President Trump's decision to fight refunds," adding that he did not think refunds "are necessary or appropriate" and that "they will be subject to much litigation." *See* Sen. Lindsey Graham (@LindseyGrahamSC), X (Feb. 20, 2026), available at https://x.com/LindseyGrahamSC/status/2024954949428490451. These statements stand in direct contradiction to the representations the government previously made to this Court.

**D. Atmus orders.**

70. On March 4, 2026, in *Atmus Filtration, Inc. v. United States*, Court No. 26-01259, ECF 21, the Court of International Trade issued an order (the "Atmus Order") directing CBP to liquidate and reliquidate "any and all" entries that were entered subject to the IEEPA tariffs, but without specifying a timeframe for CBP's compliance. On March 5, 2026, the Court narrowed this order to apply only to refunds involving a limited subset of IEEPA tariffs (i.e., the specific IEEPA tariffs before the Supreme Court in *Learning Resources,* 607 U.S. 229 (2026)). *Id.*, ECF 29.

71. On March 6, 2026, CBP Executive Director Brandon Lord filed a declaration ("Lord Declaration") explaining that CBP was unable to immediately comply with the Court's order. *Id.*, ECF 33. Mr. Lord stated that, as of March 4, 2026, CBP's existing administrative procedures and technology were not suited to process refunds at this unprecedented scale. Mr. Lord stated that CBP is developing new ACE functionality called the Consolidated Administration and Processing of Entries ("CAPE") system to streamline IEEPA refund processing. As detailed in a subsequent declaration filed on March 12, 2026, CBP reported that the development progress on CAPE's components ranged between 40% and 80%. *Id.*, ECF 39. Based on the representations made in the Lord Declaration, the Court further modified the Atmus Order by an order issued on March 6, 2026, that suspended the previous order "to the extent that

it directs immediate compliance," (*Id.*, ECF 33), and eventually continuing the suspension (*Id.*, ECF 40).

72. Notwithstanding the Atmus Order and CBP's stated efforts to develop new refund processing capabilities, Plaintiff has received no refund of the IEEPA duties it paid on its finally liquidated entries, and Plaintiff cannot obtain a refund through CAPE of IEEPA duties on its entries that have been liquidated for more than 80 days without a reliquidation order from this Court.

73. On April 7, 2026, the Court of International Trade issued an injunction in *Euro-Notions Florida, Inc. v. United States*, Court No. 25-00595, directing refund of IEEPA duties.

74. On April 20, 2026, CBP launched CAPE Phase I, which became available for use by importers and their brokers in ACE. However, CAPE Phase I contains significant limitations that prevent many importers, including Plaintiff, from obtaining complete refunds of their IEEPA duties. *See*, Declaration of Brandon Lord, Executive Director, Trade Programs Directorate, Office of Trade, U.S. Customs and Border Protection, filed April 14, 2026, in *Euro-Notions Florida, Inc. v. United States*, Court No. 1:25-cv-00595-RKE (Ct. Int'l Trade), ECF No. 15.

75. Critically, CAPE Phase I is unable to process entries that have been liquidated and are now more than 80 days post-liquidation. The March 31, 2026, Lord Declaration confirmed that CAPE Phase I will only accept "CAPE Declarations containing entries liquidated within the preceding 80 days to ensure that processing is complete and the entries are reliquidated by the 90th day to meet the agency's legal timeframe for voluntary reliquidation pursuant to 19 U.S.C. § 1501." Declaration of Brandon Lord, ¶ 7, Executive Director, Trade Programs Directorate, Office of Trade, U.S. Customs and Border Protection, filed March 31, 2026, in *Atmus Filtration, Inc. v. United States*, No. 1:26-cv-01259-RKE (Ct. Int'l Trade), ECF No. 51. Any entry more

than 80 days past its liquidation date fails CAPE's "Entry Summary is in Final Liquidation Status" validation and is ineligible for refund through CAPE Phase I. *See*, U.S. Customs and Border Protection, ACE Portal CAPE Declarations and Error Definitions, Pub. No. 5537-0426 (Apr. 2026), *available at* https://www.cbp.gov/sites/default/files/2026-04/ace_portal_-_cape_declarations_and_error_definitions.pdf; updated by Pub. No. 5552-0526 (May 2026), https://www.cbp.gov/sites/default/files/2026-05/ace_portal_-_cape_declarations_and_error_definitions_508c_0.pdf.

76. As of May 22, 2026, CBP confirmed that 3,481,844 entries included on CAPE declarations failed the entry-level validations, with the primary reasons being: the entry date is past CBP's 90-day reliquidation authority, the entry does not contain a Chapter 99 HTS number used to assess IEEPA duties, or the entry was already filed on a prior CAPE declaration. *See*, Declaration of Brandon Lord, Executive Director, Trade Programs Directorate, Office of Trade, U.S. Customs and Border Protection, filed May 26, 2026, in *Euro-Notions Florida, Inc. v. United States*, No. 1:25-cv-00595-RKE (Ct. Int'l Trade), ECF No. 30.

77. CAPE Phase I also cannot process: (a) entries that have been flagged for reconciliation; (b) entries designated on a drawback claim; (c) entries covered by an open protest or a protest denied with an Application for Further Review; (d) entries not filed in ACE; and (e) entries subject to AD/CVD for which Commerce has issued liquidation instructions pending liquidation. *See*, Declaration of Brandon Lord, filed March 12, 2026, in *Atmus Filtration, Inc. v. United States*, No. 26-01259 (Ct. Int'l Trade), which was later attached as Exhibit C to the April 14, 2026, Lord Declaration in *Euro-Notions Florida, Inc. v. United States*, No. 25-00595, ECF No. 15.

78. As of April 14, 2026, CBP identified over 15 million entries that liquidated with IEEPA duties on or before December 4, 2025, meaning they were beyond CBP's 90-day voluntary reliquidation period. These entries cannot be processed through CAPE Phase I. *See*, Declaration of Brandon Lord, Executive Director, Trade Programs Directorate, Office of Trade, U.S. Customs and Border Protection, filed April 14, 2026, in *Euro-Notions Florida, Inc. v. United States*, Court No. 1:25-cv-00595-RKE (Ct. Int'l Trade), ECF No. 15. Indeed, an entry is "finally liquidated" when it has been liquidated for more than 90 days and is thus beyond CBP's period for voluntary reliquidation under 19 U.S.C. § 1501. *Freestyle World*, *Inc. v. U.S. Customs & Border Prot.*, Slip Op. 26-123, at 2–3 n.4 (Ct. Int'l Trade Oct. 8, 2026). The Government has taken the position that the reliquidation of finally liquidated entries can only be accomplished by individualized court orders; absent a court order directing it to do so, CBP lacks authority to reliquidate finally liquidated entries. *Id.* at 22 & n.15. On October 6, 2026, CBP deployed CAPE Phase III, which permits only the plaintiffs in the cases in which the Court has ordered reliquidation to file CAPE declarations for their finally liquidated entries. *Id.* at 22. Although this Court has since certified a class of importers that paid IEEPA duties, the class excludes "any entity that has separately filed an action seeking to recover IEEPA duties payments." *Id.* at 32. Accordingly, Plaintiff requires its own individual reliquidation order to obtain refunds of IEEPA duties on its finally liquidated entries through CAPE.

79. On June 2, 2026, the Department of Justice filed a Notice of Appeal to the United States Court of Appeals for the Federal Circuit from the Court's April 7, 2026, injunction order, docketed June 3, 2026, as Federal Circuit Case No. 26-1898. In a separate but related filing on May 29, 2026, in *V.O.S. Selections, Inc. v. United States* (CIT Court No. 25-00066), the DOJ stated explicitly that defendants "intend to appeal the Court's universal injunction and to seek a

stay of the injunction except as to the particular importer plaintiffs in each case in which the Court has entered the injunction." *See*, DOJ's Motion to Amend Order, filed May 29, 2026, in *V.O.S. Selections, Inc. v. United States*, Court No. 25-00066 (Ct. Int'l Trade), ECF No. 88. If a stay is granted, CAPE refund processing may halt for several months or longer. The Government's appeal regarding whether non-plaintiff importers are entitled to refunds on finally liquidated entries remains unresolved.

80. The Government's appeal and its stated intention to seek a stay of the universal injunction further underscores that Plaintiff's right to a refund is not secure absent its own individual judgment and judicial relief. The Government's June 2, 2026, Notice of Appeal in *Euro-Notions* and its May 29, 2026, filing in *V.O.S. Selections* stand in direct tension with the Government's prior representations to this Court that "liquidation will not affect the availability of refunds after a final decision." *See*, *e.g. AGS Co. Automotive Solutions v. U.S. Customs and Border Protection*, Slip Op. 25-154 (Ct. Int'l Trade Dec. 15, 2025).

### III. Plaintiff paid preliminary IEEPA duties.

81. As of the date of this Complaint, Plaintiff has paid IEEPA duties imposed by the Challenged Tariff Orders.

82. Plaintiff's goods subject to IEEPA entered the United States under new HTSUS codes.

83. Plaintiff has paid IEEPA duties on a continuous basis.

84. The entries for which Plaintiff has paid IEEPA duties imposed by the Challenged Tariff Orders began to liquidate on June 25, 2025. All of said entries liquidated more than 90 days ago and are finally liquidated, making them ineligible for refund processing through CAPE absent a reliquidation order from this Court.

85. Upon information and belief, CBP has advised importers that it will not be extending liquidation for entries subject to IEEPA tariffs.

**COUNT I**
**THE CHALLENGED TARIFF ORDERS ARE *ULTRA VIRES***

86. Plaintiff incorporates paragraphs 1-85 above by reference.

87. In *V.O.S. Selections, Inc. v. Trump*, 772 F. Supp. 3d 1350, 1383 (Ct. Int'l Trade 2025), *aff'd*, 149 F.4th 1312 (Fed. Cir. 2025) *aff'd Learning Res., Inc. v. Trump*, 607 U.S. 229 (2026), the Court of International Trade held that the President exceeded his authority under IEEPA when he imposed tariffs on imported goods.

88. As the *V.O.S. Selections* court explained, IEEPA authorizes the President only to "investigate, regulate, or prohibit" certain foreign transactions in times of national emergency; it does not authorize the imposition of tariffs or duties on imports, and neither the text of IEEPA nor its legislative history contains any clear delegation to the President to set tariff rates.

89. The Federal Circuit affirmed that interpretation, holding that Congress did not clearly delegate to the President the authority to impose tariffs under IEEPA and that reading IEEPA to permit such authority would raise grave constitutional concerns, including under the major questions and non-delegation doctrines.

90. The Challenged Tariff Orders are materially identical in structure, authorities claimed, and effect to those struck down in *V.O.S. Selections*. They purport to impose duties and modify the HTSUS solely under IEEPA. For the same reasons set forth in *V.O.S. Selections* its affirmance by the Federal Circuit and the Supreme Court's decision in *Learning Resources*, the Challenged Tariff Orders exceed the President's statutory authority and are therefore unlawful, void *ab initio*, and without effect as applied to Plaintiff.

91. Plaintiff respectfully requests that this Court apply its precedent and the binding decisions of the Federal Circuit and the Supreme Court, declare the Challenged Tariff Orders unlawful as to Plaintiff, enjoin Defendants from enforcing them as to Plaintiff, and order Defendants to refund all IEEPA duties collected from Plaintiff, with interest as provided by law.

## COUNT II
## THE CHALLENGED TARIFF ORDERS ARE UNCONSTITUTIONAL

92. Plaintiff incorporates paragraphs 1-91 above by reference.

93. In the alternative, if the Court were to construe IEEPA as authorizing tariffs, the Challenged Tariff Orders must nevertheless be held unlawful because IEEPA in that event would constitute an impermissible delegation of legislative power from Congress to the President.

94. The U.S. Constitution vests in Congress exclusively the power to "lay and collect … Duties." U.S. CONST. art. I, § 8, cl. 1.

95. Under separation-of-powers principles and binding precedent of the Supreme Court, Congress cannot delegate its power to the President unless, at the very least, it provides an intelligible principle that directs and meaningfully constrains the President's exercise of that power. IEEPA does not do that.

96. Plaintiff seeks a declaration that the Challenged Tariff Orders are unconstitutional as to Plaintiff, an injunction preventing Defendants from enforcing them as to Plaintiff, and an order requiring Defendants to refund all IEEPA duties collected from Plaintiff, with interest as provided by law.

## COUNT III
## DECLARATORY RELIEF (28 U.S.C. § 2201)

97. Plaintiff incorporates paragraphs 1-96 above by reference.

98. Federal courts have the power "to declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

99. Plaintiff's claims present an actual controversy as to the President's authority under IEEPA, the constitutionality of IEEPA, and the authority of CBP to implement and collect the resulting tariffs.

100. Plaintiff is the importer of record and has suffered injury by having been required to pay IEEPA duties as a result of the Challenged Tariff Orders on goods it has imported into the United States.

101. This Court can exercise its equitable power to enter a declaratory judgment that the Challenged Tariff Orders are unlawful for any of the above reasons, and that CBP lacks authority to implement and collect the resulting tariffs as to Plaintiff.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

a) declare that the President lacks authority under IEEPA to set tariffs;

b) declare that the Challenged Tariff Orders are *ultra vires* and void *ab initio* with respect to Plaintiff;

c) declare that, with respect to Plaintiff, CBP lacks authority to implement and collect any tariffs set out in the HTSUS that are based on the Challenged Tariff Orders;

d) with respect to Plaintiff, enjoin Defendants from imposing and enforcing any tariffs set out in the HTSUS that are based on the Challenged Tariff Orders;

e) order the Defendants to reliquidate, without regard to IEEPA duties, any and all of Plaintiff's entries on which Plaintiff made estimated deposits pursuant to

IEEPA, including entries that have been liquidated for more than 80 days and entries for which liquidation is final, and to refund to Plaintiff all IEEPA duties collected on those entries, with interest as provided by law;

f) award Plaintiff its reasonable costs, including attorneys' fees, incurred in bringing this action; and

g) grant such further relief as this Court deems proper.

Respectfully submitted,

DENTONS COHEN & GRIGSBY P.C.

By: /s/ *Aleksandra V. Phillips*
Aleksandra V. Phillips
Pa. Id. No. 309779
625 Liberty Avenue, 5th Floor
Pittsburgh, PA 15222-3152
Ph: (412) 297- 4788
sasha.phillips@dentons.com

*Counsel for Plaintiff,*
*ENSINGER INC.*

Dated: November 12, 2026

**CERTIFICATE OF SERVICE**

Pursuant to USCIT R. 4(b) and (h), I hereby certify that on November 12, 2026, I caused a copy of Plaintiff's Complaint, Summons, Form 5, Form 11, and Form 13 to be served by certified mail, return receipt requested, upon the following:

Attorney-In-Charge
International Trade Field Office
Commercial Litigation Branch
U.S. Department of Justice
26 Federal Plaza
New York, NY 10278

Attorney-In-Charge
Commercial Litigation Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530

Attorney-In-Charge
Office of Chief Counsel
U.S. Customs and Border Protection
1300 Pennsylvania Ave., NW
Washington, DC 20229

*/s/ Aleksandra V. Phillips*
Aleksandra V. Phillips